## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This SETTLEMENT AGREEMENT AND GENERAL RELEASE ("Agreement" or "Release") is made by and between Pinnacle A Roofing Company, Robert Thomas, Continental Casualty Company and any CNA entity, as well as each of their estates, heirs, executors, successors in interest, assigns, predecessors, parent companies, suborders, subsidiaries, entities, business units, affiliates, owners, directors, members, managers, officers, partners, representatives, shareholders, attorneys, independent contractors, subcontractors, employees, insurers, underwriters, agents, subrogates, assigns, companies, leasers, lessees, franchisees, successors, and servants ("RELEASED PARTIES") and Daniel D. Paredes, his heirs, executors, administrators, successors, assigns, and agents ("RELEASOR").

In further consideration for the payment set forth above, RELEASOR represents and covenants that he will refrain from filing or promoting others to file, any other actions, lawsuits, proceedings, claims, charges, or complaints arising in whole or in part out of his employment with Pinnacle A Roofing Company (the employment relationship, including the alleged unpaid wages and cessation of employment will be referred to as the "INCIDENT") or any other's employment with Pinnacle A Roofing Company, or in any way connected to the INCIDENT with any local, state, or federal agency, self-regulatory organization, administrative, arbitration forum, court, or other entity.

In consideration of the mutual covenants in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    **RELEASOR Releases RELEASED PARTIES, as Defined Herein, From All Claims**

RELEASOR knowingly and voluntarily releases and forever discharges RELEASED PARTIES, as defined herein, from all claims, whether known or unknown, of any kind up to and including the Effective Date of this Agreement.

The Parties agree that $100 of the Settlement Sum is attributed to the general release of all claims.

2.    **Settlement Sum and Other Consideration**

In consideration for entering into this Agreement and complying with the promises made herein, RELEASED PARTIES shall pay RELEASOR the total sum of SIX THOUSAND DOLLARS AND NO CENTS ($6,000) in full satisfaction of all claims, including any claims for attorneys' fees, he has or may have against RELEASED PARTIES by reason of anything done or omitted to be done up to the Date of this Agreement (the "Settlement Sum"). The amount described in this Paragraph is to be paid by RELEASED PARTIES within fourteen (14) days of (1) RELEASED PARTIES' receipt of this notarized, executed Agreement; (2) RELEASED PARTIES' receipt of an EEOC Withdrawal of Charge of Discrimination signed by RELEASOR; (3) court approval of the settlement; and (4) RELEASOR providing the relevant tax documents The Settlement Sum shall be divided as follows: $2,933.00 to Remer & Georges-Pierre, PLLC and $3,067.00 to Daniel Paredes.

RELEASOR understands and agrees that RELEASED PARTIES would not pay the Settlement Sum but for him entering into this Agreement and the representations contained herein, and that in return for the payment of this Settlement Sum, he waives and releases RELEASED PARTIES from any and all liability of any kind from the beginning of time to the date of this Agreement. Furthermore, RELEASOR represents and warrants that he has received all wages to

which he is entitled under the law.

**3.    RELEASED PARTIES Deny Any Liability or Wrongdoing**

RELEASED PARTIES deny any liability for any claim which may be brought by RELEASOR. By entering into this Agreement, all parties deny any liability or wrongful conduct. The parties have agreed to enter into this Agreement to avoid any cost and uncertainty from continuing their disputes.

**4.    Non-disparagement and Neutral Reference**

As a free and voluntary act, RELEASOR agrees that he will make no written or oral statements, including emails, blog entries, or posts on any social media outlet such as Facebook, MySpace, or related sites, or in any other format whatsoever, that directly or indirectly disparage RELEASED PARTIES or the INCIDENT regarding: (a) the circumstances of his employment and separation from employment with Pinnacle A Roofing Company; (b) working conditions at Pinnacle A Roofing Company; or (c) Pinnacle A Roofing Company's employment and business practices. Nor will RELEASOR make any written or oral statement(s) that directly or indirectly disparage Pinnacle A Roofing Company's owners, officers, managers, employees, and products and services.

Pinnacle A Roofing Company agrees that if contacted by a potential employer or other third party requesting information regarding RELEASOR, Pinnacle A Roofing Company will promptly confirm his last title, approximate dates of employment, and salary. Pinnacle A Roofing Company agrees that any information provided will be limited to that associated with a neutral reference.

The Parties agree that $100 of the Settlement Sum is attributed to the promises contained in Section 4 of this Agreement.

5.      **No Future Application for or Acceptance of Employment**

RELEASOR shall not knowingly apply for or accept employment, reinstatement, assignment or contract work with RELEASED PARTIES or any other affiliates of RELEASED PARTIES. RELEASOR agrees that if he knowingly or unknowingly applies for a position with RELEASED PARTIES or any other affiliates of RELEASED PARTIES and is offered or accepts a position, or if he is currently in a position, RELEASED PARTIES may withdraw the offer or terminate RELEASOR'S employment immediately, without notice. RELEASOR agrees that, in the event of such an offer and withdrawal, or hiring and termination, as described in this paragraph, he waives any right to seek legal or administrative redress of any kind for events relating to the withdrawal of the offer or termination of employment.

The Parties agree that $100 of the Settlement Sum is attributed to the promises contained in Section 5 of this Agreement.

6.      **Confidentiality**

This Agreement shall not be filed with any court or agency and shall remain forever confidential except that only RELEASED PARTIES may waive this provision and to the extent required by law (e.g. court approval). Except as may be required by law, rule, regulation or subpoenas, RELEASOR shall not disclose to any person or entity any information whatsoever regarding the substantive terms of this Agreement, including the Settlement Sum. RELEASOR understands that if he violates this provision of this Agreement, RELEASED PARTIES will suffer irreparable harm and will be entitled to initiate proceedings in an appropriate state or federal court seeking damages up to and possibly exceeding the amount of the Settlement Sum herein. The only exceptions to this confidentiality agreement will be RELEASOR's communications to immediate

family, tax, or legal advisors. RELEASOR acknowledges that RELEASED PARTIES and its affiliates as defined in this Agreement have certain confidential information, which is a valuable, special, and unique asset of RELEASED PARTIES' business. "Confidential information" shall mean all information, other than that available to the public or within RELEASOR'S knowledge prior to his employment with RELEASED PARTIES, which relates to RELEASED PARTIES' business activities including, but not limited to, its bylaws, secret ceremonies, manner of operating its businesses, the names, addresses and telephone numbers of its clients, and other trade secrets, including work procedures. Except as may be authorized by RELEASED PARTIES in writing or required by any governmental authority or through legal process, RELEASOR shall not disclose any such confidential information in any manner whatsoever. RELEASOR also agrees to return to RELEASED PARTIES immediately, if he has not done so already, all digital and physical copies of his work product, including forms, handbooks, procedure documents or other materials prepared by, with, or for RELEASED PARTIES, and he further agrees to maintain the confidentiality of such information.

The Parties agree that $100 of the Settlement Sum is attributed to the promises contained in Section 6 of this Agreement.

7.     **Definitions**

"Claims" includes all claims and allegations that RELEASOR could have brought against RELEASED PARTIES, as defined herein, whether known or unknown, under all federal, state, and local laws, including, but not limited to, the following:

- The Florida Wage Rate Provision, Florida Statutes § 448.07;
- Florida's Attorneys' Fees Provision for Successful Litigants in Suits for Unpaid Wages, Florida Statutes § 448.08;

- The Florida Equal Pay Act, Florida Statutes § 725.07;

- The Civil Rights Act of 1964;

- The Civil Rights Act of 1991;

- The Civil Rights Act of 1866;

- The Older Workers Benefit Protection Act;

- The Fair Labor Standards Act;

- Title VII;

- The Florida's Civil Rights Act of 1992, as amended;

- The Florida's Private Sector Whistleblower Act, Florida Statute § 448.102, *et. seq.*;

- The Family and Medical Leave Act of 1993;

- The Employee Retirement Income Security Act of 1973;

- The Consolidated Omnibus Budget Reconciliation Act of 1985;

- The Age Discrimination in Employment Act of 1967;

- The Labor Management Relations Act of 1947;

- Sections 1981 through 1988 of Title 42 of the United States Code;

- The Americans with Disabilities Act of 1990;

- The Occupational Safety and Health Act;

- The Equal Pay Act of 1963;

- The Rehabilitation Act of 1973;

- The Health Maintenance Organization Act of 1973;

- The Immigration Reform and Control Act of 1986;

- The Securities Act of 1933;

- The Securities Exchange Act of 1934;

- The Florida Statutes regulating Securities Transactions, including but not limited to Ch. 517;

- Executive Order 11141;

- Executive Order 11246;

- Executive Order 11375;

- Florida's workers compensation retaliation statute, Florida Statutes § 440.205;

- Uniformed Services Employment and Reemployment Rights Act (USERRA);

- Any other federal, state or local civil, human, or employment rights laws, regulations, ordinances, or executive orders;

- Any tort or common law claims including, without limitation, any claims for defamation, slander, negligence, personal injury (other than workers' compensation), negligent or intentional infliction of emotional distress, or any alleged violations of public policy;

- Any claims for recovery of attorney's fees or costs, or reimbursement for vehicles, insurance for vehicles, apartment rental or other housing allowances, relocation expenses, or living expenses of any kind.

8.    **Medicare/Medicaid Acknowledgments**

RELEASOR and his counsel warrant that he is not a Medicare beneficiary as of the date of this Release, and therefore, no conditional payments have been made by Medicare. RELEASOR will indemnify, defend, and hold harmless RELEASED PARTIES from any and all claims, liens, Medicare conditional payments, and rights to payment, known or unknown. This settlement is based upon a good faith determination of the parties to resolve a disputed claim. The parties have not shifted responsibility of medical treatment to Medicare in contravention of 42 U.S.C. § 1395(y)

(b). The parties resolved this matter in compliance with both state and federal law, and have made every effort to adequately protect Medicare's interests and to incorporate such into the terms of this Agreement.

9.    **Governing Law and Interpretation**

This Agreement and General Release shall be governed and conformed in accordance with the laws of Florida without regard to its conflict of laws provision.  Should any provision of this Agreement and General Release be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, the remainder of this Agreement shall remain in full force and effect.  Any dispute about this Agreement must be brought only in a court of competent jurisdiction located in Florida.

10.   **Amendment**

This Agreement may not be modified, altered or changed except upon express written consent of both parties wherein specific reference is made to this Agreement.

11.   **Entire Agreement**

This Agreement sets forth the entire agreement between the Parties hereto and may not be altered in any way without express written agreement of both parties.  The Parties also agree and understand that any previous written or oral agreements of any kind between them are superseded by the Agreement and shall have no legal effect or impact whatsoever except as provided herein.

12.   **RELEASOR's Right to Consider this Agreement**

a.    This Section (Section 12a) only applies if RELEASOR is under forty years old: RELEASOR acknowledges he was advised to confer with counsel regarding the execution of this agreement and has had the opportunity to do so. RELEASOR further represents and warrants that he is not forty years old and, therefore, not subject to the old workers benefit protection act.

b.     This Section (Section 12b) only applies if RELEASOR is over forty years old: RELEASOR acknowledges he was advised to confer with counsel regarding the execution of this agreement and has had the opportunity to do so.  RELEASOR further acknowledges that he was advised on the day he received this agreement that he has certain rights under the age discrimination in employment act and the older workers' benefit protection act and that he specifically has a period of 21 calendar days to review and consider this agreement before signing. RELEASOR acknowledges that he may voluntarily waive the 21-day consideration period and may sign this agreement at any time before the 21-day period elapses.  RELEASOR also understands that after signing this agreement, he  may, in his  sole discretion, revoke acceptance by giving written notice to Carlo D. Marichal, LAW OFFICES OF LORRAINE LESTER, 1200 South Pine Island Road, Suite 750, Plantation, FL 33324, prior to 7 full days after this execution of this agreement.  If he does not revoke his acceptance of this agreement within the 7-day period, this agreement becomes effective upon the 8th day.

13.    **Court Approval**

The Parties agree that this agreement shall be approved by a court of competent jurisdiction. If the court does not approve this Agreement, the parties shall make good-faith efforts to take additional actions that may lead to court approval. However, if the court does not approve this agreement, the Parties agree that there is no agreement and they revert back to as if the agreement was never signed.

I HAVE READ THIS RELEASE IN FULL. I UNDERSTAND AND AGREE TO THE
TERMS AND CONDITIONS CONTAINED IN IT.

By: _____

Daniel D. Paredes

STATE OF Florida          :

COUNTY OF Dade          :

On the 6 day of Aug , 2018, before me personally appeared Daniel D.
Paredes, who presented Florida License as identification or
PC632 - 164 - 85 - 134 - 1
who is known to me to be the person described in, who executed the foregoing RELEASE OF
ALL CLAIMS, and who acknowledged to me that he executed it as his own free act and deed.

_____

Notary Public



Elsa Peraza
Commission # GG096719
Expires: April 23, 2021
Bonded thru Aaron Notary

By:_____

As officer/agent of Pinnacle A Roofing Co.

STATE OF _____        :

COUNTY OF _____        :

On the _____ day of _____, _____, before me personally appeared _____

_____, who presented _____

as identification or who is known to me to be the person described in, who executed the foregoing

RELEASE OF ALL CLAIMS, and who acknowledged to me that he executed it as his/her own

free act and deed.


_____

Notary Public